IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM A. ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-0624-CV-W-NKL |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is William Ellis's ("Ellis") Motion for Summary Judgment [Doc. # 4]. Ellis seeks judicial review of the Commissioner's denial of his request for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* The Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Following a review of the entire record, the Court affirms the ALJ's decision.

**I. Background**

    **A. Medical Overview**

---

[1] Upon review of the record and the law, the Commissioner's position is found to be persuasive. Much of the Commissioner's brief is adopted without quotation designated.

1

Ellis was born in 1952 and he initially alleged an onset of disability date of October 29, 2002. At the Administrative hearing, he amended his onset date to November 11, 2002. In his application, Ellis alleged that his disabling condition was degenerative disc disease.

Dr. Charles McGrath was Ellis's treating physician. He first consulted with Ellis about his back pain and prescribed him medication in September 2000. Dr. McGrath referred Ellis to obtain a magnetic resonance imaging ("MRI") of his back. An MRI performed on September 13, 2000, revealed degenerative disc disease from L3 through S1, most marked at L5-S1. (Tr. 181.) The MRI also demonstrated a bulging disc at L5-S1, and the radiologist noted there was very little change from a previous review conducted in December 1997. (Tr. 182.)

An MRI performed in April 2001 further defined Ellis's back problems. It concluded that Ellis suffered from a bulging disc at L5-S1 with mild foraminal stenosis. According to John Collins, the doctor who performed the MRI, "[Ellis] was advised that I felt he should continue with conservative treatment at this time" and Collins advised him to continue using anti-inflammatory medication and a heating pad. (Tr. 120.) Collins advised Ellis to perform "sedentary to moderate activity" and they would reassess whether he was able to return to work in two weeks. Collins stated in summation, "[Ellis] will always have some degree of permanent disability referable to his back secondary to his significant disc disease at L5-S1." (Tr. 120.)

Another MRI was performed in February 2004, which compared Ellis's status with

2

his September 2000 MRI. The February 2004 results revealed:

> There is mild degenerative disc disease from L3-L4 and L4-L5 with
> moderate changes at L5-S1. Conus is unremarkable. A significant
> extradural defect is not seen. There are changes involving the right neural
> foramen at L5-S1. This has been seen previously and shows little interval
> change. Small bulge is now seen at L4-L5 slightly asymmetric to the left
> with some slight extension into the neural foramen, but existing nerve roots
> intact.

(Tr. 126.)

Ellis states that Dr. McGrath treated him "about every other month" but this is not accurate. *See* Ellis Motion [Doc. # 4] at p. 8. Dr. McGrath saw Ellis regularly from September 2000 through April 2001, but he saw him only five times after Ellis's amended onset date: twice in November 2002, February 2003, April 2003, and October 2003. Between April 2001 and November 2002, Ellis saw Dr. McGrath only twice. Of the five appointments after Ellis's onset date, he mentioned Ellis's back pain four times, but he did not include any objective findings. At the most recent appointment in October 2003, Dr. McGrath did not reference Ellis's back pain at all. (Tr. 127.)

Other doctors conducted physical examinations of Ellis. In March 2003, Joe Pryor examined Ellis for a disability determination. Dr. Pryor noted that Ellis's treatment "has been epidural injections and some therapy, as well as pain medication." (Tr. 108.) In his conclusion, Dr. Pryor stated,

> The patient does have a significant limitation of motion for the lumbar
> spine, especially for flexion and extension. I believe the patient has
> handicap for activities requiring repetitive bending over, especially for
> retrieving objects from the floor, due to the limitation of motion. He could
> also have pain with repetitive activities requiring bending of the spine. I

3

Case 4:05-cv-00624-NKL   Document 6   Filed 03/27/06   Page 3 of 10

> think ht would have increased pain with heavy lifting, especially of greater than 35 pounds, and especially on a repetitive basis. No musculoskeletal or neuromuscular impairment was observed in regard to walking or standing with the exception of the degree to which the patient would suffer pain in the low back from these activities. The patient reports he does have significant difficulty with prolong standing, especially for more than two hours, without opportunity for rest. He did not describe pain with prolonged sitting. In regard to upper extremities, I saw no neuromusculoskeletal impairment in regarding to carrying or handling objects. No evidence was observed of inflammation of joints of upper or lower extremities. The grip strength was normal. I believe the patient has coordination and dexterity sufficient for fine finger movement such as manipulating tools or small parts.

(Tr. 109.)

Ellis has intermittently been off work because of his condition. Ellis was off work because of his condition from March 14, 2001, to April 4, 2001, under the care of Dr. McGrath. (Tr. 161.) Ellis was off work again from October 30, 2002, to November 11, 2002, because of his condition and his work release was again signed by Dr. McGrath. (Tr. 141.) Dr. McGrath's work limitations consistently found that Ellis could not lift more than 35 pounds. In his November 11 evaluation of Ellis, Dr. McGrath noted he was incapable of physical activity, but he nonetheless released him back to work on that day. (Tr. 140.)

According to the record, Ellis's pain was managed by a few epidural injections in late 2000, with the last occurring in February 2001, and some pain medication. Ellis never underwent surgery to relieve his back pain.

**B.    The Hearing**

The administrative hearing occurred on July 22, 2004. Ellis testified that he lived

4

alone. He stated that he drove to a restaurant every morning to eat breakfast with friends. He also testified that he left home to pick up groceries from a neighborhood church's food pantry. Regarding chores, Ellis also stated that he mowed his lawn using a riding lawn mower, but that he was "pretty well down and out for a day or two after that." (Tr. 227-28.) He testified his daughter comes to his house and does the bulk of his domestic work, such as dusting, cleaning, and laundry. Ellis stated he could "probably" lift 35 pounds and he was even able to lift 50 pounds, although he stated, "I'd pay for it." (Tr. 237.) Ellis also testified that he would work on the computer during the day to surf the Internet and look at old cars.

George Robert McClellan also testified at the administrative hearing as a vocational expert. (Tr. 247-53.) The ALJ posed a hypothetical question to the vocational expert, which assumed an individual of Ellis's age, education, and work experience. The individual in the hypothetical could lift 35 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, occasionally climb, kneel, crouch and crawl, and frequently balance and stoop. The vocational expert testified that such an individual could perform jobs at the light exertional level, including cashier, parking lot attendant, gate building guard, and office helper. The vocational expert testified that ten percent of the jobs at the light exertional level would permit a worker to sit or stand at will.

**C.    The ALJ's Decision**

The ALJ determined that Ellis suffers from "severe" impairments, those being

degenerative disc disease and protrusion at L5-S1 with mild foraminal stenosis. (Tr. 18.) According to the ALJ, "This condition has more than a minimal effect on claimant's ability to perform basic work-related activities." (Tr. 18)

In formulating Ellis's residual functional capacity ("RFC"), the ALJ gave limited weight to Ellis's credibility using the factors set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). The ALJ gave limited weight to Ellis's claims of disabling pain because no doctor submitted an opinion that Ellis was disabled or that he would require rest during the workday. (Tr. 19.) To the contrary, the ALJ noted that Dr. Pryor and the state physician had stated that "[Ellis] could perform light exertional level activities with few additional limitations." (Tr. 19.) The ALJ also relied on Ellis's conservative treatment history and his daily activities. In noting Ellis's daily activities, the ALJ stated,

> [Ellis] is able to mow his own yard, handle his own finances, leave his home without assistance, socialize with friends, drive, and participate in at least one hobby. Although such activities do not require extensive exertional abilities, they indicate that [Ellis] can at least perform sedentary and light activities on a regular basis.

(Tr. 19.) In sum, the ALJ found that Ellis was not disabled despite his limitations. The ALJ noted, "[Ellis]'s representative did not introduce any evidence or advance any argument supporting a conclusion that any of [Ellis]'s impairments met or equaled a listing." (Tr. 18.)

**II. Discussion**

    **A. Ellis's Credibility**

The Court finds that the ALJ's credibility determination to give little weight to

Case 4:05-cv-00624-NKL   Document 6   Filed 03/27/06   Page 6 of 10

Ellis's complaints of disabling pain is supported by substantial evidence in the record. To analyze a claimant's subjective complaints of pain, the ALJ must consider the entire record including the medical records and the claimant's statements, as well as: the claimant's daily activities; the duration, frequency, and intensity of the pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 751 F.2d at 948.

The ALJ's determination that the objective medical evidence surrounding Ellis's condition does not support his claims of disabling pain was not erroneous. Ellis was seen only intermittently by physicians for his back trouble and his treatment regimen was conservative. The MRI scans of Ellis's back did not reflect substantial degeneration over time, which suggests his condition is not rapidly deteriorating. Ellis is correct that an ALJ cannot reject subjective complaints only because of the absence of supporting objective evidence. However, the Eighth Circuit has nonetheless held that the absence of an objective medical basis to support the degree of Ellis's subjective complaints of pain is an important factor in evaluating the credibility of his complaints. *See Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991); *Edwards v. Sec. of Health & Human Services*, 809 F.2d 506, 508 (8th Cir. 1987). Thus, the ALJ did not err in relying, in part, on the absence of objective medical evidence to evaluate Ellis's credibility.

The ALJ also properly considered that none of the physicians who treated Ellis submitted an opinion that he was disabled nor did any of them submit any evidence that Ellis would require rest during the workday because of his pain. The absence of such a

7

finding is a proper factor for an ALJ to consider. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)).

Finally, the ALJ also properly relied on Ellis's daily activities in deciding to find his credibility was limited. Ellis testified that he left home every day to eat breakfast with friends, he would mow his lawn using a riding lawnmower, and he would work on the computer during the day. He also stated that his hobby was researching and learning about old cars, although he no longer performed the routine service work on them. Ellis also testified that he could drive and that he regularly left his home without assistance. While Ellis did testify about his limitations with house work and a lack of other socialization, the foregoing evidence supports the ALJ's conclusion that Ellis's daily activities undermined his credibility. *See Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations.") (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)).

Based on the foregoing, the ALJ's finding that Ellis's subjective complaints of pain were not credible is supported by substantial evidence in the record.

**B.     Ellis's RFC**

Ellis argues that the ALJ erred when he did not include the factors of pain, fatigue, or frequent rest when he formulated Ellis's RFC. Only credible conditions must be included in a claimant's RFC and the subsequent hypothetical question to the vocational

expert, and the Court has already found that the ALJ did not err when he found that Ellis's complaints of disabling pain were not credible. *See Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999); *Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998). Thus, it was not error for the ALJ to exclude Ellis's complaints of pain from the hypothetical RFC that was posed to the vocational expert at the hearing.

Regarding Ellis's fatigue and his need for frequent rest, the ALJ did not include those factors in the RFC because they were not supported by any evidence other than Ellis's testimony. No physician had found that Ellis required rest or frequent breaks and the ALJ's decision to exclude these factors is supported by substantial evidence in the record. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) ("Finally, there is no medical evidence supporting [the claimant]'s claim that she needs to lie down during the day.").

The ALJ's RFC formulation is supported by substantial evidence in the record and the hypothetical question submitted to the vocational expert was not erroneous. The ALJ properly relied on the medical records in crafting the RFC in that the weight limitations contained therein were consistent with the restrictions imposed by Ellis's physicians. Thus, the record supports the ALJ's determination and because the hypothetical question to the vocational expert was properly formulated, the expert's testimony that jobs existed that Ellis could perform constituted substantial evidence supporting the ALJ's decision. *See Miller v. Shalala*, 8 F.3d 611. 613-14 (8th Cir. 1993); *Andres v. Bowen*, 870 F.2d 453, 455-56 (8th Cir. 1989).

### III. Conclusion

An examination of the ALJ's decision reveals that it is supported by substantial evidence on the record as a whole. Accordingly, it is hereby

ORDERED that Ellis's Motion for Summary Judgment [Doc. # 4] is DENIED. The decision of the Commissioner is affirmed.

                                                 s/ Nanette K. Laughrey
                                                 NANETTE K. LAUGHREY
                                                 United States District Judge

DATE: March 27, 2006
Kansas City, Missouri